## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JEFFREY S. VANSTRATEN,

    Plaintiff,

    v.                      Case No. 20-CV-889

KILOLO KIJAKAZI,
Acting Commissioner of Social Security[1],

    Defendant.

## DECISION AND ORDER

Jeffrey S. Vanstraten seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his claim for a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is affirmed and the case is dismissed.

## BACKGROUND

Vanstraten is a veteran of the United States Marine Corps. who served from May 1990 until May 1994, including deployment to Iraq and Kuwait from December 1990 until May 1991. (Tr. 464.) On June 19, 2017, Vanstraten filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on May 25, 2015 (Tr. 18) due to post-traumatic stress disorder ("PTSD"), alcoholism, anxiety, depression, high blood pressure, and back issues (Tr. 252). Vanstraten's application was denied initially and upon reconsideration. (Tr. 18.) Vanstraten filed a request for a hearing, and a hearing was

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's recent appointment as acting commissioner.

held before an Administrative Law Judge ("ALJ") on December 4, 2018. (Tr. 125–50.) Vanstraten testified at the hearing, as did Adolph Swick, a vocational expert. (Tr. 125.)

In a written decision issued April 17, 2019, the ALJ found that Vanstraten had the severe impairments of PTSD, depression, alcohol use disorder, anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), degenerative disc disease, hallux rigidus, and patellofemoral syndrome. (Tr. 21.) The ALJ found that Vanstraten did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 21–23.) The ALJ further found that Vanstraten had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: cannot kneel or crawl; is limited to occasional climbing, stooping, crouching, and balancing; can perform simple, routine, repetitive, and noncomplex tasks; cannot perform fast-paced production work; is limited to minimal change in work routine with no tandem or teamwork; can have no public contact; and can have only occasional interaction with co-workers and supervisors. (Tr. 24.)

While the ALJ found that Vanstraten was unable to perform his past relevant work, she determined that given his age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that he could perform. (Tr. 29–31.) As such, the ALJ found that Vanstraten was not disabled from May 25, 2015, through the date of the decision. (Tr. 31.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Vanstraten's request for review. (Tr. 1–6.)

## DISCUSSION

### 1.    *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal

standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2.   *Application to This Case*

Vanstraten alleges three errors in the ALJ's determination of non-disability: (1) failing to properly evaluate the opinion of psychologist Dr. Robert Marcellino; (2) failing to properly evaluate his deficits in concentration, persistence, or pace; and (3) failing to properly evaluate his subjective symptoms pursuant to Social Security Ruling ("SSR") 16-3p. (Pl.'s Br., Docket # 12.) I will address each argument in turn.

3

### 2.1    Evaluation of Dr. Marcellino's Opinion

Vanstraten argues that the ALJ ignored critical evidence from Dr. Marcellino, "a Veterans' Affairs psychologist treating a war veteran with PTSD." (Pl.'s Br. at 6.) He asserts that an ALJ must evaluate all medical opinions in the record, citing 20 C.F.R. § 1520c(a), and that her failure to explain the weight given to this medical opinion is legal error warranting reversal. (Pl.'s Br. at 5.) As an initial matter, Vanstraten is not entirely correct about the nature of Dr. Marcellino's evaluation.

As a veteran, Vanstraten sought disability benefits from the Veterans' Administration ("VA"). (Tr. 132.) When a veteran seeks disability benefits from the VA, he or she is sometimes required to have what is known as a Compensation and Pension ("C&P") examination to assist in evaluating the disability claim. https://www.va.gov/disability/va-claim-exam/(last visited Sept. 1, 2021). What Vanstraten characterizes in his brief as "treatment" with Dr. Marcellino is actually a C&P examination on August 12, 2015, lasting 65 minutes, performed in connection with his disability claim with the VA related to PTSD. (Tr. 461, 474.) Thus, for purposes of weight, Dr. Marcellino is not a treating source, but an examining source.

Vanstraten faults the ALJ for failing to consider one specific opinion from Dr. Marcellino—that his PTSD was likely to have an adverse impact on his ability to interact effectively with co-workers and supervisors due to irritability, outbursts of anger, and persistent and exaggerated negative beliefs or expectations about others. (Pl.'s Br. at 5, citing Tr. 475.) It is undisputed that Dr. Marcellino's opinion is not included in the ALJ's decision. While Vanstraten concedes that the ALJ was not required to adopt the VA's finding regarding

4

his employability, he argues that the ALJ was required to address the opinion and explain why he rejected the limitations. (*Id.* at 6.)

That is not entirely accurate. Vanstraten is correct that the regulations state that disability determinations made by other governmental agencies, such as the VA, are not binding on the Social Security Administration. 20 C.F.R. § 404.1504. The ALJ notes as much. (*See* Tr. 28 ("The undersigned further notes that the claimant is a 70% disabled veteran. This status is no longer considered an opinion under new social security regulations.").) However, the regulations also provide that for claims filed on or after March 27, 2017 (like Vanstraten's), the Administration *will not* provide any analysis in its decision regarding the other agency's disability determination. 20 C.F.R. § 404.1504. Thus, an ALJ need not, as Vanstraten contends, address and explain why she rejected limitations found in an opinion.

What the regulation does require, however, is for the Administration to consider all of the supporting evidence underlying the other agency's decision that it receives as evidence in accordance with § 404.1513(a)(1) through (4). *Id.* And, as the ALJ stated, she "fully considered treatment records during the entire period relevant to this case. Many of these treatment records are from the Department of Veteran Affairs." (Tr. 28.) Even assuming Dr. Marcellino's opinion is "supporting evidence underlying" the VA's decision, the ALJ's failure to mention this single statement is at most harmless error. The ALJ fully consider the record evidence regarding the impact of Vanstraten's PTSD on his ability to interact with others given his alleged irritability and angry outbursts. (Tr. 22–23, 26–27.) She accounted for these symptoms by limiting him to no contact with the public and only occasional interaction with co-workers and supervisors. (Tr. 24, 28.) Accordingly, I do not find the ALJ erred in this regard.

5

### 2.2 Deficits in Concentration, Persistence, or Pace

Vanstraten also argues that the ALJ erred in failing to properly evaluate his deficits in concentration, persistence, or pace. (Pl.'s Br. at 7–10.) The ALJ determined that Vanstraten had moderate limitations in concentration, persistence, or pace due to his mental health impairments (Tr. 23) and limited him to performing simple, routine, repetitive, and noncomplex tasks and no fast-paced production work to account for his difficulties (Tr. 24, 28). Vanstraten focuses on his limitations in concentration due to his ADHD, arguing that the record supports him having difficulties with remaining on task. (Pl.'s Br. at 9, citing Tr. 268, 292, 293, 365, 465, 471, 473, 571, 768, 809, 836.) He further argues that the "very name and nature" of ADHD indicates severe attentional deficits. (*Id.*) As such, Vanstraten argues the ALJ erred by failing to assess whether he has an off-task limitation. (*Id.*)

But the ALJ *did* consider Vanstraten's reported concentration difficulties. (Tr. 23.) The ALJ further found, however, that Vanstraten's mental status examinations generally failed to document deficits in this area. (*Id.*) The ALJ is correct. The record is replete with findings of Vanstraten's concentration being within normal limits or grossly intact. (Tr. 363, 366–67, 508, 530, 540, 543, 551, 770, 787, 804, 848, 850, 856, 862–63, 866, 868, 872, 878, 881, 890, 904, 908, 926, 939.) Even when Vanstraten reported poor concentration to providers (*see, e.g.*, 362, 768, 888), upon mental status examination, his concentration was normal (*see, e.g.,* 363, 770, 890). Because of his normal mental status examinations, both State Agency psychologists at the initial and reconsideration levels opined only mild limitations in the ability to concentrate, persist, or maintain pace. (Tr. 155, 158, 169–70.) The ALJ, however, stated that she added additional limitations to account for Vanstraten's subjective complaints and more recent treatment records. (Tr. 29.) Despite the ALJ's more generous finding of a moderate limitation,

the record clearly supports a finding of only mild limitations in concentration, persistence, or pace.

Furthermore, Vanstraten points to no record evidence supporting that *any* off-task limitation is necessary, much less the work-preclusive limitation of being off-task more than 10% of the workday. (Pl.'s Br. at 9–10.) On the contrary, the record demonstrates that Vanstraten frequently engaged in tasks that require significant concentration, such as hunting and riding a motorcycle. (Tr. 786, 803, 836, 925, 935.) In fact, in July 2018, Vanstraten went on a motorcycle trip from Wisconsin to Pennsylvania for a veterans' reunion. (Tr. 845.) Prior to the trip, his treating psychiatrist, Dr. Peter Fischer, stated that he wished to see Vanstraten prior to the trip as he "would certainly want his focus and concentration to be as good as we can get it before that." (Tr. 850.) When Dr. Fischer examined Vanstraten on July 12, 2018, just before the trip, he noted that Vanstraten's focus and concentration were improved and that he was "in a good spot to take long motorcycle trip to Pennsylvania for the reunion." (Tr. 845.) Also, the record indicates that Vanstraten's concentration was much improved while on medication. In October 2018, Vanstraten told Dr. Fischer that he keeps active, including hunting on his property and "got a deer this year." (Tr. 804.) Dr. Fischer continued Vanstraten on his dose of 20 grams of dextroamphetamine twice daily, noting that the medication "gives him about four hours focusing concentration per dose." (*Id.*)

For these reasons, Vanstraten has not shown the ALJ erred in assessing his limitations in concentration, persistence, or pace.

### 2.3    Consideration of Subjective Complaints

Finally, Vanstraten argues that the ALJ improperly considered his subjective complaints pursuant to SSR 16-3p. Specifically, Vanstraten argues that the ALJ failed to

explain how he could perform sedentary work despite his difficulties sitting and (Pl.'s Br. at 10) further argues the ALJ improperly considered his activities of daily living— including working out, riding ATVs, and working on his property—to discount his allegations of disabling pain (*id.* at 11).

The Commissioner's regulations set forth a two-step test for evaluating a claimant's statements regarding his symptoms. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p. Second, if the claimant has such an impairment, the ALJ must evaluate the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* If the statements are not substantiated by objective medical evidence, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record and considering a variety of factors, including the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes; treatment, other than medication, used for relief of the symptoms; other measures the claimant uses to relieve the symptoms; and any other factors concerning the claimant's functional limitations due to the symptoms. *Id.*

Jobs that are classified as sedentary generally require sitting for six hours out of an eight-hour workday. SSR 96-9p. Vanstraten testified at the administrative hearing that he is only able to sit for a half hour before his knees get stiff. (Tr. 141.) Vanstraten's testimony, however, conflicts with the evidence of record. To begin, in his Adult Function Report, Vanstraten does not report having *any* problems with sitting (Tr. 268) and stated that he could

sit for an hour without taking a break (Tr. 271). Furthermore, even despite claims of lower back pain and knee pain throughout the relevant time period, Vanstraten reported that his back and knee pain was at a "2" or lower while sitting and stated that sitting generally alleviated his pain and discomfort. (Tr. 878, 882, 901.) Thus, there is no record evidence to support his inability to sit for six hours due to back and/or knee pain.

Finally, Vanstraten's activities of daily living indeed conflict with his allegations of disabling pain. The ALJ relied on Vanstraten's ability to exercise, go for ATV rides, and maintain his barns and extensive property in discounting his allegations of disabling pain. (Tr. 28.) Vanstraten argues that the ALJ erred in doing so because the record "did not suggest the length or intensity of any given workout . . . did not elaborate on the ATV ride such as its duration or what physical abilities it required . . . [and did not describe] what maintaining his property entailed." (Pl.'s Br. at 11.)

This is simply inaccurate. Vanstraten's medical records paint the picture of someone leading a fairly active life—exercising (Tr. 540), hunting (Tr. 787, 804, 926), riding his motorcycle (Tr. 469, 847, 882, 926), helping his son move (Tr. 839), traveling (*id.*), cutting up trees (Tr. 588), visiting family and friends (Tr. 873), and generally staying busy with lots of projects (Tr. 873, 882). Contrary to Vanstraten's assertion, the record very clearly indicates that Vanstraten was exercising frequently (Tr. 540) and could spend one hour on the elliptical (Tr. 886). And while the record may not state exactly how long Vanstraten spent on his ATV, one of his other stated activities was riding his motorcycle. (Tr. 469, 847, 882, 926.) Clearly one "physical ability" required for riding a motorcycle is the ability to sit for long durations, especially given Vanstraten's ability to go on a motorcycle ride from Wisconsin to Pennsylvania during the relevant time period. (Tr. 845.)

9

Furthermore, contrary to Vanstraten's assertions, the record describes in some detail what maintaining his 60 acres of property entailed and it is clear that Vanstraten did much more than simply "call a contractor" to complete the work. (Pl.'s Br. at 12.) Vanstraten told the VA examiner that he has two horses, two goats, four dogs, and three cats. (Tr. 468.) He "[does] a lot in the morning, feed the horses. At night [he] work[s] around the barn area." (*Id.*) In November 2018, Vanstraten told Dr. Fischer that he was "hunting a lot. Pretty stress free. Building a blind, working on trim in my basement." (Tr. 786.) Elsewhere in the record Vanstraten describes "spending a lot of time" deer hunting on his property. (Tr. 787, 804, 926.) Even after his disability hearing and before the ALJ could issue the decision, Vanstraten was climbing up on his roof in an attempt to shovel snow off of it when he slipped and fell, ending up in the emergency room. (Tr. 96.) Thus, Vanstraten's level of activity clearly cuts against his allegations of disabling pain.

## CONCLUSION

Although Vanstraten argues that the ALJ erred in multiple respects, I find the decision is supported by substantial evidence. The decision is affirmed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

10

Dated at Milwaukee, Wisconsin, this 1st day of September, 2021.

BY THE COURT

_____

NANCY JOSEPH
United States Magistrate Judge